UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.C.R., a minor, by and through his guardian ad litem, GUILLERMA BOJORQUEZ,<br><br>Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>Defendants. | Case No. 14-cv-03918 NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 40 |

This case is about six-year-old plaintiff J.C.R.'s allegation that defendant Lenita Stallworth hit him with a ruler on the back for talking to a friend at summer camp. At issue in the present motion is whether the Fourth or Fourteenth Amendment applies to the use of corporal punishment by a San Francisco Parks and Recreation Department summer camp manager on a six-year-old child. Defendants move to dismiss J.C.R.'s constitutional claims on the basis that such conduct does not violate the Fourth and Fourteenth Amendments, so Stallworth is entitled to qualified immunity. San Francisco also argues that it should not be liable for the constitutional claims because Stallworth's actions were singular, and are not sufficient to demonstrate that the city was deliberately indifferent to the use of excessive force on children in the city's care.

//

Case No. 14-cv-03918 NC

First, the Court finds that the Fourth Amendment applies to excessive force cases in a summer camp setting because J.C.R. was not free to leave the camp premises and was therefore seized. Second, under either constitutional amendment, considering the facts in the light most favorable to the plaintiff, a constitutional violation occurred. Third, this right was clearly established at the time of the incident. Therefore, the Court DENIES summary judgment as to Stallworth's qualified immunity defense.

However, the Court finds that plaintiff has not demonstrated that San Francisco's failure to train or failure to supervise Stallworth amounted to deliberate indifference, sufficient to hold San Francisco liable for a constitutional violation. Therefore, the Court GRANTS summary judgment to San Francisco on the constitutional claim.

## I.   BACKGROUND

### A.   Facts

Guillerma Bojorquez enrolled her six-year-old son, plaintiff J.C.R., in a summer camp program at the Joseph Lee Rec Center in 2013. Dkt. 30 at 3; Bojorquez Decl. at ¶ 1. J.C.R. was six-years-old and weighed approximately forty-five pounds. Bojorquez Decl. at ¶ 1. Defendant City and County of San Francisco, through the San Francisco Parks and Recreation Department, operates the Joseph Lee Rec Center. Mitchell Dep. at 3. Defendant Lenita Stallworth served as camp manager at the center in 2013 and supervised J.C.R. while he attended the camp. Stallworth Dep. at 16. Stallworth is 5 feet 10 inches tall, and in 2013, she weighed approximately 300 pounds. Stallworth Dep. at 3. Stallworth kept an 18-inch ruler wrapped in blue tape on her desk, which she referred to as "her friend" in front of the children at the summer camp. Stallworth Dep. at 22.

The Joseph Lee Rec Center summer camp served children ages five to twelve years old, and once the students were dropped off, they were not free to leave the camp. Stallworth Dep. at 21. The summer camp took field trips at least once a week. Stallworth Dep. at 20.

According to Lorraine Banford, the head of all San Francisco summer camps, the Parks and Recreation Department employee policies prohibit violence in the workplace,

Case No. 14-cv-03918 NC         2

1   and the handbook containing such policies is provided to all camp managers, including
2   Stallworth. Banford Decl. ¶ 4. According to Banford, Stallworth underwent instruction
3   prior to the summer of 2013 on the Parks and Recreation Department's behavior policy
4   program which mandates positive discipline, rather than using punishment or time outs.
5   Banford Decl. ¶ 5. Stallworth only recalls the employee handbook she received when she
6   began working at the summer camp in 1996. Stallworth Dep. at 42. Stallworth does not
7   recall training on the behavior policy program. Stallworth Dep. at 37.

### 1. Incident with J.C.R.

While attending camp on June 26, 2013, J.C.R. testified that he was talking with a friend when Stallworth told him to "stop talking." J.C.R. Dep. at 27. J.C.R. testified that Stallworth then struck him on the back with a ruler. J.C.R. Dep. at 27-28. J.C.R. did not cry at this time. Dkt. 40 at 8.

Later that day, Bojorquez saw a red welt on J.C.R.'s back "in the shape of a long stick, like a ruler mark." Dkt. No. 30 at 6; Dkt. No. 43 at 11. When Bojorquez touched the welt, J.C.R. cried and described a stinging pain. Dkt. No. 30 at 6. Bojorquez did not seek medical treatment for J.C.R.'s bruise, which healed after a week. Dkt. No. 30. at 3; Dkt. No. 40 at 8. The following day, Bojorquez withdrew J.C.R. from the Joseph Lee Rec Center summer camp. Bojorquez Decl. ¶ 5. Bojorquez reported the incident to Banford. Banford Dep. at 38.

### 2. Pier 39 Incident

Prior to the incident with J.C.R., an individual named Mattie contacted the Parks and Recreation Department to report that she had seen a woman matching Stallworth's description hit a little girl on the head with a ruler wrapped in blue tape. Banford Dep. 34. The incident occurred at Pier 39, when summer camp students were on a field trip. Banford Dep. at 34. Banford believed that Stallworth was the person involved in the report, but did not immediately contact her. Banford Dep. at 41. The Parks and Recreation Department no longer has a record of Mattie's call, and therefore, the parties do not know precisely when the Pier 39 incident occurred. Banford Dep. 35.

Case No. 14-cv-03918 NC             3

Banford testified that she completed her investigation of the incident five days after speaking to Mattie, and Banford completed her report on June 29, 2013. Banford Dep., Exh. 16.

### 3. San Francisco's Investigation

Banford investigated the complaints and drafted a report. Banford Dep., Exh. 16. The Parks and Recreation Department terminated Stallworth two days later on July 1, 2013. Banford Dep., Exh. 17.

### B.   Procedural History

Plaintiff J.C.R. by and through his guardian ad litem, Bojorquez, sued the City and County of San Francisco and San Francisco Parks and Recreation Department (collectively, "San Francisco") on August 28, 2014.[1] Dkt. No. 1. On June 1, 2015, plaintiff amended his complaint to add Stallworth as a defendant. Dkt. No. 30. Defendants moved for partial summary judgment on July 22, 2015. Dkt. No. 40. The Court held a hearing on the motion on August 26, 2015. Dkt. No. 49.

Plaintiff and all served defendants have consented to the jurisdiction of a magistrate judge. Dkt. Nos. 7, 10, 38.

## II.   LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Bald assertions that genuine issues of

---

[1] The Parks and Recreation Department has not been served and has not separately appeared.

Case No. 14-cv-03918 NC            4

1  material fact exist are insufficient. *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

The moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial. Fed. R. Civ. P. 56(c); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (citing *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)). All justifiable inferences, however, must be drawn in the light most favorable to the nonmoving party. *Tolan*, 134 S. Ct. at 1863 (citing *Liberty Lobby*, 477 U.S. at 255).

### III.  DISCUSSION

J.C.R.'s complaint presents six causes of action: (1) negligence; (2) assault and battery; (3) violation of civil rights under 42 U.S.C. § 1983; (4) violation of civil rights under California law; (5) negligent infliction of emotional distress; and (6) intentional infliction of emotional distress. Dkt. No. 30. Stallworth and San Francisco move for partial summary judgment on plaintiff's third cause of action under § 1983. Dkt. No. 40. Defendants argue that (A) J.C.R. cannot establish a constitutional violation because Stallworth is entitled to qualified immunity; and, (B) in any event, San Francisco cannot be held liable for any constitutional violations committed by Stallworth. *Id.* at 10-13.

#### A.  Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 817 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231

Case No. 14-cv-03918 NC                 5

1  (2009). Qualified immunity is immunity from suit and should be decided prior to trial.

2  *Mitchell v. Forsyth*, 472 U.S. 511 (1985); *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

3  Courts generally engage in a two-part analysis in determining whether qualified

4  immunity should apply. *Tolan*, 134 S. Ct. at 1865. First, a court must determine whether

5  the facts, "[t]aken in the light most favorable to the party asserting the injury . . . show the

6  officer's conduct violated a [constitutional] right." *Id.* (quoting *Saucier*, 533 U.S. at 201).

7  Second, "[a]n officer conducting a [seizure] is entitled to qualified immunity where

8  clearly established law does not show that the [seizure] violated the Fourth Amendment."

9  *Pearson*, 555 U.S. at 243-44. "[T]he salient question . . . is whether the state of the law at

10  the time of an incident provided fair warning to the defendants that their alleged [conduct]

11  was unconstitutional." *Id.* (internal quotation marks and citation omitted). "This inquiry

12  must be undertaken in light of the specific context of the case, not as a broad general

13  proposition." *Saucier*, 533 U.S. at 201. "This is not to say that an official action is

14  protected by qualified immunity unless the very action in question has previously been

15  held unlawful, but it is to say that in light of the pre-existing law the unlawfulness must be

16  apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

17  To determine whether qualified immunity applies here, the Court considers (1) the

18  appropriate constitutional standard; (2) whether Stallworth violated J.C.R.'s Fourth

19  Amendment rights; (3) whether Stallworth violated J.C.R.'s Fourteenth Amendment rights;

20  and (4) whether these rights were clearly established at the time of the incident.

### 1. Appropriate Constitutional Standard

The first question presented by the parties is under which constitutional amendment plaintiff's claim should be evaluated. Defendants argue that the Fourteenth Amendment's "shocks the conscience" standard is appropriate because this incident is not a seizure under the Fourth Amendment. Dkt. No. 40 at 6-7.[2] Plaintiff argues that the Fourth

---

[2] The Fourteenth Amendment states, "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state

Case No. 14-cv-03918 NC         6

1   Amendment's reasonableness standard applies because excessive force in a summer camp
2   setting constitutes a seizure.  Dkt. No. 43 at 9.[3]

3   Prior to 2003, the Ninth Circuit case law applied either or both the Fourth and
4   Fourteenth Amendment to § 1983 claims in a school setting.  *See P.B. v. Koch*, 96 F.3d
5   1298, 1302-03 (9th Cir. 1996).  However, in *Doe ex rel. Doe v. Hawaii Dept. of Educ.*, 334
6   F.3d 906, 908 (2003), the Ninth Circuit clarified its past case law and held that "it is clear
7   that the Fourth Amendment applies in the school environment."  The Court further
8   explained that the Fourth Amendment applies to government conduct motivated by
9   administrative purposes, and therefore, school administrators who are performing
10  administrative functions in disciplining children are liable under the Fourth Amendment.
11  *Id.* at 909.  Subsequently, in *Preschooler II v. Clark County School Bd.*, 479 F.3d 1175,
12  1182 (9th Cir. 2007), the Ninth Circuit confirmed that the Fourth Amendment applies
13  specifically to excessive force cases in a school setting: "we now typically analyze
14  excessive force allegations against public school students under the Fourth Amendment."
15  Therefore, the Court finds that this claim should be analyzed under the Fourth
16  Amendment.

17  Defendants argue that in both *Doe* and *Preschooler II*, the Ninth Circuit left open
18  the possibility that certain excessive force cases may not be appropriate to analyze under
19  the Fourth Amendment framework.  *Doe*, 334 F.3d at 909; *Preschooler II*, 279 F.3d at

---

deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.

[3] The Fourth Amendment states, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.

Case No. 14-cv-03918 NC            7

United States District Court
Northern District of California

1181 n.5. While the Ninth Circuit has mentioned such a possibility, it is unclear under what factual scenario the Fourth Amendment might be inappropriate. The defendants cited to no case interpreting this language or finding that the Fourth Amendment was inappropriate, and the undersigned did not find any such case. In this case, as discussed below, J.C.R. was not free to leave the summer camp, which implicates his Fourth Amendment right to be free from unreasonable seizure. Additionally, the directive from the Ninth Circuit is that cases involving corporal punishment in school settings implicate the student's Fourth Amendment rights. *See Doe*, 334 F.3d at 909; *Preschooler II*, 479 F.3d at 1180. While the Court concludes that the Fourth Amendment is the appropriate framework for this case, in an abundance of caution, the Court has analyzed plaintiff's claims under both amendments.

### 2. Fourth Amendment

A seizure under the Fourth Amendment exists when there is a restraint on liberty to the degree that a reasonable person would not feel free to leave. *See United States v. Summers*, 268 F.3d 683 (9th Cir. 2001). Additionally, while "children sent to public school are lawfully confined to the classroom, arbitrary corporal punishment represents an invasion of personal security to which their parents do not consent when entrusting the educational mission to the State." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). Here, Stallworth testified that during camp hours, the children were not free to leave. Stallworth Dep. at 21. Additionally, J.C.R. was six years old when he attended the camp. Bojorquez Decl. ¶ 1. Taken in the light most favorable to the plaintiff, the Court concludes that J.C.R. was not free to leave, so the Fourth Amendment is implicated.

A seizure violates the Fourth Amendment if it is objectively unreasonable under the circumstances. *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002). "In applying the Fourth Amendment in the school context, the reasonableness of the seizure must be considered in light of the educational objectives" an administrator is trying to achieve. *Doe*, 334 F.3d at 909. In *New Jersey v. TLO*, 469 U.S. 325, 342 (1985), the Supreme Court stressed that a search in the school context must be reasonably related to its purpose,

Case No. 14-cv-03918 NC          8

and must not be "excessively intrusive in light of the age and sex of the student and the nature of the infraction." In guiding its reasonableness analysis, the Ninth Circuit has considered "the fact that [plaintiff] is so severely disabled and was so young at the time of the abuse." *Preschooler II*, 479 F.3d 1175 (1181). Additionally, "[t]here need not be a case dealing with these particular facts to find [a school official's] conduct unreasonable." *Doe*, 334 F.3d at 910.

Here, J.C.R.'s offense was talking to his friend while at a park. J.C.R. Dep. at 25. According to J.C.R., his punishment for the offense was a slap with Stallworth's ruler. J.C.R. Dep. at 25-28. The impact of the ruler left a red welt and bruise on his back for a week. Bojorquez Decl. ¶ 6. From these facts alone, the Court concludes that the ruler slap was excessively intrusive to punish a six-year-old child, talking to his friend at a park.

Additional facts guide the Court's analysis: Stallworth is 5 feet 10 inches tall, and weighed approximately 300 pounds at the time of the incident. Stallworth Dep. at 3. Stallworth kept an 18-inch ruler wrapped in blue tape on her desk. Stallworth Dep. at 22-26. On at least one occasion, she referred to the ruler as "her friend" in front of the children at the summer camp. Stallworth Dep. at 22-26. On the other hand, J.C.R. weighed 45 pounds. Bojorquez Decl. ¶ 1. J.C.R. has difficulty reading and writing and has been diagnosed with a learning disability, causing him to repeat first grade. Bojorquez Decl. ¶ 2.

### 3. Fourteenth Amendment

Even if the Court analyzed this claim under the Fourteenth Amendment, the Court still concludes that taken in the light most favorable to plaintiff, a constitutional violation occurred. Under the Fourteenth Amendment, a plaintiff's rights are violated if the defendant's conduct is "arbitrary, or conscience shocking." *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998). Not only was J.C.R.'s punishment excessively intrusive proportionate to his offense, but also it shocks the conscience. In *P.B.*, the Ninth Circuit found that when "there was no need to use force" against the student, "one can reasonably infer that [defendant] took these actions not in good faith but for the purpose of causing

harm." 96 F.3d at 1304. Stallworth has provided no disciplinary justification for her ruler slap.

Defendants argue that this Court should find plaintiff's arguments unavailing, as Judge Phyllis J. Hamilton found in *Garadekis v. Brentwood Unified Sch. Dist.*, 14-cv-4799 PJH, 2015 WL 2453295 (N.D. Cal. May 22, 2015). In *Garadekis*, six special needs elementary students alleged that a teacher subjected them to emotional and physical abuse in violation of both the Fourth and Fourteenth Amendments. *Id.* at *1-2. Although the complaint alleged that one student came home with "red marks" on his arms and another claimed he had "bruises and scratches," plaintiffs failed to allege that the teacher caused the injuries by using unconstitutional physical force. *Id.* at *7. Finding no constitutional amendment implicated, the Court granted defendants' motion to dismiss. *Id.* The undersigned finds *Garedakis* factually distinguishable to the present case because here, J.C.R. has testified that he suffered abuse and injury at the hands of Stallworth. Therefore, there are sufficient facts for the Court to conclude, drawing all inferences in favor of the plaintiff, that a constitutional violation occurred.

### 4. Clearly Established

Under the second element of the qualified immunity test, the Court considers whether the law was "clearly established" when the incident occurred. "[T]he salient question . . . is whether the state of the law at the time of an incident provided fair warning to the defendants that their alleged [conduct] was unconstitutional." *Pearson*, 555 U.S. at 243-44. Here, the Court concludes that the law was clearly established.

In *Preschooler II*, 479 F.3d at 1182, the Ninth Circuit found that school administrators were not entitled to qualified immunity because the law against excessive force was clearly established. The Court noted, "[e]xisting law plainly prohibits excessive hitting, dragging or throwing of public school children." *Id.* In addition, the law is clearly established, even when it may be uncertain which constitutional provision applies. In *P.B.*, the Ninth Circuit found that a school official was not entitled to qualified immunity because, "[r]egardless of the appropriate 'home' for plaintiffs' right to be free from

1    excessive force, there was a clearly established right to be free from such force in 1990 and
2    1991.  That there is a possible uncertainty as to the appropriate test does not immunize
3    [defendant's] actions from liability." 96 F.3d at 1303 n.4.  Because the Court finds that the
4    law was clearly established that a plaintiff's right to be free from excessive force was
5    clearly established at the time of the incident, the Court DENIES defendants' motion for
6    summary judgment on the § 1983 claim as to defendant Stallworth.

###    B.    Municipal Liability Under *Monell*

8    San Francisco argues that even if this Court denies summary judgment on the
9    qualified immunity defense, San Francisco as a municipality is not liable for Stallworth's
10   actions under *Monell*.  Dkt. No. 40 at 11-13.
11   Title 28 U.S.C. § 1983 states that "[e]very person who, under color of [law],
12   subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation
13   of any rights, privileges, or immunities secured by the Constitution and laws, shall be
14   liable to the party injured in an action at law."  "Congress intended the term 'person' to
15   include municipalities," such as the City and County of San Francisco.  *Monell v.*
16   *Department of Social Services of New York*, 436 U.S. 658, 690 (1978); *Christie v. Iopa*,
17   176 F.3d 1231, 1242 (9th Cir. 1999).
18   Under *Monell* and subsequent case law, a municipality's liability may be premised
19   on any of three theories: (1) that an employee was acting pursuant to an expressly adopted
20   official policy; (2) that an employee was acting pursuant to a longstanding practice or
21   custom; or (3) that an employee was acting as a "final policymaker."  *Lytle v. Carl*, 382
22   F.3d 978, 982 (9th Cir. 2004).
23   J.C.R. alleges that San Francisco is liable "by failing to prevent, provide supervision
24   of, and/or proper training to" Stallworth.  Dkt. No. 30 ¶ 36.  Allegations of failure to train
25   and failure to supervise are analyzed under the first theory of *Monell* liability, that of an
26   "expressly adopted official policy," as further outlined below.  *Connick v. Thompson*, 131
27   S. Ct. 1350, 1359 (2011).
28   /

### 1. Failure To Train

Under limited circumstances, "a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for the purposes of § 1983." *Connick*, 131 S. Ct. at 1359. In order to establish liability under this theory, the "municipality's failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (citing *Canton v. Harris*, 489 U.S. 378, 388 (1989)). The Supreme Court has cautioned that a "municipality's culpability for deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* In the Ninth Circuit, evidence of a municipality's failure to train a single officer is insufficient as a matter of law to establish a deliberate policy. *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007). "[A]bsent evidence of a 'program-wide inadequacy in training,' any shortfall in a single officer's training 'can only be classified as negligence on the part of the municipal defendant—a much lower standard of fault than deliberate indifference.'" *Id.* at 484-85 (quoting *Alexander v. City & Cnty. of San Francisco*, 29 F.3d 1355, 1367 (9th Cir. 1994).

To succeed on a failure to train claim, a plaintiff must demonstrate that "policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights." *Id.* at 1360. "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006).

Therefore, in order to establish municipal liability based on a failure to train, a plaintiff must show: (a) deprivation of a constitutional right; (b) a training policy that amounts to deliberate indifference to the constitutional rights of the persons with whom the administrators are likely to come into contact; and (c) that his constitutional injury would have been avoided had the municipality properly trained the administrators. *Blankenhorn*, 485 F.3d at 484.

Plaintiff cites to *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992), for the proposition that "a local governmental body may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights." Plaintiff's interpretation of the law in that case is incorrect. In *Oviatt*, the Ninth Circuit made the above statement, but then proceeded to explain and apply the same "deliberate indifference" standard as cited in *Blankenhorn* to determine if a local governmental body's policy of inaction creates liability. *Id.* Therefore, *Oviatt* finds that the "deliberate indifference" standard is the applicable law for failure to train claims. Thus, the Court applies the test set out in *Blankenhorn* to assess San Francisco's liability in this case.

### a. Deprivation of a Constitutional Right

As the Court analyzed above, the Court has concluded that drawing all inferences and resolving all doubts in favor of the plaintiff, a reasonable jury could find that Stallworth's actions amounted to a deprivation of a constitutional right. Therefore, plaintiff has met the first element.

### b. Training Policy that Amounts to Deliberate Indifference

As to the second element, "[t]o prove deliberate indifference, the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation." *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1186 (9th Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1994)). The Supreme Court and the Ninth Circuit have noted that "'much more difficult problems of proof' are presented in a case where a city employee acting under a constitutionally valid policy violated someone's rights." *Id.* (quoting *Bd. of Cnty. Com'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 405 (1997)).

Here, J.C.R.'s evidence that San Francisco failed to train its employees is that (1) Stallworth testified that she had not received a copy of the employee handbook since 1996; and (2) that Stallworth does not recall attending training on "progressive behavior management." Dkt. No. 43 at 23-24. Drawing all inferences and resolving all doubts in favor of the plaintiff, the facts demonstrate that Stallworth was not adequately trained on

Case No. 14-cv-03918 NC               13

employee policies or student behavior management.

However, plaintiff only presents evidence that Stallworth either could not remember her training or failed to attend available trainings. Dkt. No. 43. Plaintiff does not present any evidence that San Francisco generally failed to train its summer camp employees in the use of corporal punishment. Additionally, plaintiff does not present evidence that San Francisco was on actual or constructive notice that its failure to provide such trainings would likely result in a constitutional violation. From the evidence in the record, it does not appear that San Francisco received any complaints from any other summer camp students, other than the Pier 39 incident, about the unconstitutional use of corporal punishment. *See generally*, Dkt. No. 43. Additionally, there is no evidence that other summer camp employees believed that the use of excessive force was appropriate. As held in *Blankenhorn*, a "shortfall in a single officer's training can only be classified as negligence on the part of the municipal defendant" and does not amount to deliberate indifference. 485 F.3d at 484-85.

### c. Causal Link Between Lack of Training and Deprivation

On the third element, the plaintiff must demonstrate that the deliberate indifference by San Francisco was a "moving force" behind Stallworth's actions. *See Long v. County of Los Angeles*, 442 F.3d 1178, 1190 (9th Cir. 2006). The plaintiff bears the burden of "establish[ing] that the injury would have been avoided had proper policies been implemented." *Id.* at 119.

Plaintiff here does not present any concrete evidence that Stallworth's actions would have been different if she received further training from San Francisco.

Therefore, the Court concludes that plaintiff has not presented facts sufficient to demonstrate that drawing all inferences in favor of plaintiff, San Francisco is liable under § 1983 for its failure to train Stallworth.

### 2. Failure To Supervise

Plaintiff's second theory of liability is that San Francisco failed to adequately supervise Stallworth. Dkt. No. 43. "A municipality cannot be held liable under § 1983 on

a *respondeat superior* theory." *Monell*, 436 U.S. at 691. Instead, Congress intended to hold municipalities liable only when "action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employee* of the municipality and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original). The Ninth Circuit analyzes a failure to supervise claim under the same deliberate indifference standard as a failure to train claim. *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989). Mere negligence in training or supervision does not give rise to a *Monell* claim. *Id.*

Plaintiff cites to *Preschooler II*, 479 F.3d at 1182, for the proposition that "a supervisor is liable for the acts of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." However, the Ninth Circuit provided no application of this rule, finding that at the motion to dismiss stage, a plaintiff "does not need to show with great specificity how each defendant contributed to the violation of his constitutional rights." *Id.*

Here, J.C.R.'s evidence of a failure to supervise is that, drawing all inferences and resolving all doubts in favor of the plaintiff, San Francisco was on notice of a prior incident with Stallworth (the Pier 39 incident) up to 6 days before the incident with J.C.R. Dkt. No. 43 at 22. The Court cannot conclude, on this evidence alone, that San Francisco was deliberately indifferent to violations of students' constitutional rights. One prior incident does not amount to a program-wide policy of failing to supervise San Francisco summer camp employees. Additionally, the parties do not dispute that San Francisco did ultimately investigate both incidents, and then terminated Stallworth. *See Investigative Report of Lorraine Banford*, Dkt. No. 44-1 at 19-23.

Plaintiff has set forth facts that demonstrate, drawing all inferences and resolving all doubt in favor of the plaintiff, that San Francisco may have negligently trained and supervised Stallworth in the use of corporal punishment. However, municipal liability

does not attach to negligent behavior, but requires the City to have an official custom or policy of violating constitutional rights, or deliberate indifference to the likely consequence of violating constitutional rights. From the facts presented, the Court concludes that San Francisco does not have such policy. Therefore, defendant San Francisco's summary judgment motion on the § 1983 claim is GRANTED.

## IV. CONCLUSION

The Court DENIES summary judgment on the § 1983 claim as to Stallworth's actions. The Court GRANTS summary judgment on the § 1983 claim as to San Francisco's liability. The Court finds that drawing all inferences in favor of the plaintiff, there are material issues of fact suitable for determination by a jury remaining.

Therefore, the claims to be tried are:

1. Negligence as to all defendants.
2. Assault and battery as to all defendants.
3. Violation of civil rights under 42 U.S.C. § 1983 as to Stallworth only.
4. Violation of civil rights under California law (Bane Act) as to all defendants.
5. Negligent infliction of emotional distress as to San Francisco.
6. Intentional infliction of emotional distress as to all defendants.

The Court has already issued a pretrial order detailing what the parties must prepare for trial. Dkt. No. 51. The parties are reminded that if they wish this case to be referred to a magistrate judge for a settlement conference before trial, they must file a request for referral by October 7, 2015.

**IT IS SO ORDERED.**

Dated: September 11, 2015    _____
NATHANAEL M. COUSINS
United States Magistrate Judge